# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Endurance American Specialty )
Insurance Company and )
XL Specialty Insurance Company, )
)
      Plaintiffs, )      No. 18 C 08399
)
      v. )      Judge Edmond E. Chang
)
Victory Park Capital Advisors, LLC, )
Victory Park Management, LLC, )
GPL Servicing, Ltd., )
GPL Servicing Trust II, and )
VPC/TF Trust I, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

In this insurance coverage dispute, the Defendants (referred to collectively as "Victory Park") hold two insurance policies issued by the Plaintiffs. This case started out in state court, but Victory Park removed the case from the Cook County Circuit Court to this Court. R. 1, Notice of Removal.[1] The insurers filed a motion to remand the case back to state court. R. 45, Pls.' Mot. Remand (redacted version). Victory Park opposes the motion to remand and responds with a cross-motion to transfer the case to the Bankruptcy Court for the Northern District of Texas. R. 47, Defs.' Resp. and Cross-Mot. For the reasons explained below, the insurers' motion to remand is granted, and Victory Park's motion to transfer is denied.

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

# I. Background

The parties dispute whether the insurers must cover Victory Park for several lawsuits that Victory Park is facing as a result of its involvement in payday loans allegedly made through Indian tribal organizations (call these lawsuits the "tribal lending lawsuits"). Pls.' Mot. Remand at 1-2; Defs.' Resp. and Cross-Mot. at 2-3. One of Victory Park's affiliates in that alleged scheme, Think Finance, has filed for bankruptcy in the Northern District of Texas. Pls.' Mot. Remand at 1-2; Defs.' Resp. and Cross-Mot. at 2-3. Victory Park argues that Think Finance agreed to indemnify Victory Park for any losses incurred as a result of the alleged tribal lending scheme, pointing to indemnification provisions in two contracts between Victory Park and Think Finance. *See* Defs.' Resp. and Cross-Mot. at 3; R. 49, Pls.' Reply and Resp. at 6-7; R. 45-3, Mot. Remand Exh. 2, Fourth Amended Guaranty and Security Agreement (GSA) § 16(b); R. 45-4, Mot. Remand Exh. 3, Eleventh Amended Administrative Agency Agreement (AAA) § 3.2(b). Victory Park has filed a proof of claim under that theory in the Think Finance bankruptcy case, alleging that Victory Park is one of Think Finance's creditors. Pls.' Mot. Remand at 2; Defs.' Resp. and Cross-Mot. at 3; R. 45-2, Mot. Remand Exh. 2, Proof of Claim.

Separate from the Think Finance indemnity, Victory Park has another potential source to cover its losses arising from the tribal lending lawsuits: Victory Park had purchased private-equity liability insurance policies from the insurers "for claims made during the period of October 30, 2016 to October 30, 2017." Pls.' Mot. Remand at 1; Defs.' Resp. and Cross-Mot. at 3-4; R. 2-2, Notice of Removal Exh. C, Chancery Div. Civil Cover Sheet, Exh. 1, Ins. Pol. at 4. But the insurers contend that

those policies do not cover the tribal lending lawsuits because the lawsuits arose as a single claim *before* the policy coverage began. Pls.' Mot. Remand at 1; *see also* R. 1-2, Notice of Removal Exh. A, State Ct. Compl. ¶ 2. But more importantly for the competing motions, even if the insurers are deemed responsible for covering Victory Park against the tribal lending lawsuits, the policies include a subrogation clause that subrogates the insurers "to all the Insureds' [Victory Park's] rights of recovery" "to the extent of [the insurance] payment." Notice of Removal Exh. C, Chancery Div. Civil Cover Sheet, Exh. 1, Ins. Pol. at 18.

In November 2018, the insurers filed this lawsuit in the Chancery Division of the Cook County Circuit Court, seeking a declaratory judgment that they are *not* responsible for covering the tribal lending lawsuits. Notice of Removal Exh. A, State Ct. Compl. Victory Park then filed a notice of removal to this Court. R. 1. The insurers have now moved to remand the case to state court, R. 45, and Victory Park has cross-moved to transfer it to the Northern District of Texas, R. 49.

## II. Analysis

### A. Related-to Jurisdiction & Mandatory Abstention

The Bankruptcy Code occupies Title 11 of the United States Code. Federal district courts are granted subject matter jurisdiction over bankruptcy matters by 28 U.S.C. § 1334, which says that district courts have jurisdiction over "all cases arising under title 11," "arising in" title 11, or "related to cases under title 11." 28 U.S.C. § 1334(b). Put broadly, a dispute is "related to" a bankruptcy case if it is "likely to affect the debtor's estate." *Matter of Heath*, 115 F.3d 521, 524 (7th Cir. 1997). More specifically, the Seventh Circuit has explained that the "related to" category

encompasses two types of cases. First, it includes "tort, contract, and other legal claims *by and against the debtor*, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others." *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994) (emphasis added) (citing *In re Xonics*, 813 F.2d 127, 131 (7th Cir. 1987)). And second, it can "force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate." *Zerand*, 23 F.3d at 161-62. In situations in which the case does not directly involve a debtor, the case is still "related to" a bankruptcy case if it "affects the amount of property available for distribution or the allocation of property among creditors." *Xonics*, 813 F.2d at 131; *see also Matter of Kubly*, 818 F.2d 643, 645 (7th Cir. 1987) ("[D]isputes among creditors of a bankruptcy come within the federal bankruptcy jurisdiction only if they involve property of the estate or if resolving two creditors' intramural squabble will affect the recovery of some other creditor.").

Even if a case qualifies as "related to" a bankruptcy case so that a federal court has jurisdiction over it, there is still an instance when the federal court must abstain from hearing the case. Specifically, if related-to jurisdiction is the sole basis for jurisdiction, and the state court can "timely" decide the state law claim, then mandatory abstention is triggered:

> Upon timely motion of a party in a proceeding based upon a State law claim ... related to a case under title 11 ..., with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2); *see also In re Laddusire*, 541 B.R. 697, 704 (Bankr. W.D. Wis. 2015) (explaining the elements of mandatory abstention). If all those conditions apply, then this Court *must* remand the case.

In a case removed from state court, a party may move to remand "on the basis of any defect other than lack of subject matter jurisdiction … within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). The Court can entertain challenges to its subject matter jurisdiction at any time during the proceeding. 28 U.S.C. § 1447(c). In challenges to subject matter jurisdiction, "the party asserting" jurisdiction bears the burden of proving that it exists. *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

## B. Related-to Jurisdiction Over Creditor Insurance Coverage

The insurers' remand motion argues that this Court lacks jurisdiction under 28 U.S.C. § 1334(b), and in the alternative—even if it *does* have jurisdiction—that it must remand the case under the mandatory-abstention provision in § 1334(c)(2). Subject matter jurisdiction comes first.

Victory Park's notice of removal asserts jurisdiction under 28 U.S.C. § 1334. Notice of Removal at 1. As explained above, § 1334 grants federal district courts jurisdiction over "all cases arising under title 11," "arising in" title 11, or "related to cases under title 11." 28 U.S.C. § 1334(b). Victory Park does not argue that this case "arises in" or "under" Title 11. Defs.' Resp. and Cross-Mot. at 4-14. So the crux of the dispute is whether the case is "related to" Think Finance's bankruptcy case, in which Victory Parks is an alleged creditor.

Of course, the bankruptcy debtor, Think Finance, is not a party to this insurance-coverage case. So the only way this case could be "related to" Think Finance's bankruptcy would be if the result of the case might affect the amount of property in the bankruptcy estate or otherwise impact the amounts that Think Finance's creditors stand to recover. *See Xonics*, 813 F.2d at 131. Victory Park's best argument for related-to jurisdiction is that if the insurers must cover Victory Park against the tribal lending lawsuits, then Victory Park's indemnification claim against Think Finance for those same losses will be reduced by a corresponding amount. Defs.' Resp. and Cross-Mot. at 4-9 ("In the event that the Victory Park Defendants are entitled to indemnification from the Think Finance estate, that indemnity obligation will be reduced by amounts recovered under the Plaintiffs' insurance policies."). In response, the insurers counter that coverage would *not* reduce Victory Park's claim against Think Finance, because the insurance policies include subrogation provisions. Pls.' Mot. Remand at 11-12. That is, even if the insurers are responsible for covering the tribal lending lawsuits, the insurers "will simply step into Victory Park's shoes as a creditor" in the Think Finance bankruptcy. *Id*. In that scenario, the party litigating Victory Park's proof of claim might change, but the claim itself would still exist, resulting in no effect on the bankruptcy estate.

Victory Park cites no case that is directly on point, that is, a case in which a federal court (whether bankruptcy, district, of appellate) has held that related-to jurisdiction applies to an insurance-coverage dispute between a bankruptcy creditor and the creditor's insurer over losses that the bankruptcy debtor might be liable to

indemnify. Instead, Victory Park points to general statements drawn from a Seventh Circuit case, *Xonics*, 813 F.2d at 131. As mentioned earlier, it is true that, in *Xonics*, the Seventh Circuit stated that a case is covered by related-to jurisdiction if it "affects the amount of property available for distribution or the allocation of property among creditors." *Id. Xonics* did not, however, involve a situation anywhere close to the insurance-coverage dispute on hand. In *Xonics*, two creditors asserted ownership over property that had been abandoned by the bankruptcy debtor. *Id.* at 128-29 (describing debtor's abandonment of certain accounts receivable). The competing creditors and the district court had not addressed whether, under the reorganization plan, the decision on the competing claims would have an effect on the recovery of creditors *other than* the two claimants. *Id.* at 132. So the Seventh Circuit remanded the case to determine whether other creditors' recoveries would be impacted. *Id.*

In discussing *Xonics*, at least one bankruptcy-court decision has noted that *Xonics* could be interpreted as providing for expansive related-to jurisdiction. *In re Sage Enters., Inc.*, 2006 WL 1722582, at *10 (Bankr. N.D. Ill. Apr. 28, 2006) (observing that "the mere potential reduction of a claim resulting from a third party dispute may constitute a sufficient effect on the estate to confer jurisdiction," but declining to definitively decide the issue).[2] But other bankruptcy courts have

---

[2]Victory Park also cites *In re Destron, Inc.*, 38 B.R. 310, 313 (N.D. Ill. 1984), and *Enesco Corp. v. Callaway*, 1990 WL 114198, at *5 (N.D. Ill. Aug. 2, 1990), to argue that any *possible* chance that the outcome of a case might impact a bankruptcy proceeding automatically qualifies for related-to jurisdiction. Defs.' Resp. and Cross-Mot. at 9-10. But the cases do not go that far. Instead, the opinions still required that the claim against a third-party must "*necessarily* diminish the plaintiff's claim" if established. *Destron*, 38 B.R. at 313 (emphasis added); *Enesco Corp.*, 1990 WL 114198, at *5 (quoting *Destron* for the same proposition).

cautioned that a "mere possibility" that other creditors would be affected is not enough to establish related-to jurisdiction. *In re Doctors Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 317-18 (Bankr. N.D. Ill. 2004); *see also Bode v. AERCO Int'l, Inc.*, 2014 WL 1661345, at *2 (S.D. Ill. Apr. 25, 2014) (collecting cases). Setting too low of a threshold would expand related-to jurisdiction to the point of sweeping into bankruptcy court cases that otherwise are routine disputes between a creditor and someone who has nothing to do with the bankruptcy estate. *See Doctors Hosp.*, 308 B.R. at 317. Indeed, *Doctors Hospital* offered an insurance-coverage dispute between a creditor and an insurer as the prime example of a too-expansive interpretation of related-to jurisdiction:

> For example, if a creditor had a claim against a debtor, but insurance might also cover some of the creditor's losses, the creditor could sue the insurer in bankruptcy court. The Seventh Circuit's narrow view of "related to" jurisdiction does not stretch this far.

*Id.* And *Xonics* itself emphasized that related-to jurisdiction must be confined to its purpose: "The bankruptcy jurisdiction is designed to provide a single forum for dealing with *all claims to the bankrupt's assets*. It extends no farther than its purpose." 813 F.2d at 131 (emphasis added).

Here, Victory Park and the insurers are not even fighting over the debtor's assets, as the competing creditors were in *Xonics*. So Victory Park is left with the argument that a finding of insurance coverage will increase—indirectly—the assets of Think Finance available to creditors because Victory Park's indemnification claim against Think Finance will be reduced. Even if this were a viable theory of related-to jurisdiction, Victory Park has not met its burden of establishing that the debtor's

property will be increased. As explained next, the subrogation clause in the insurance policies and the indemnification provisions in the GSA and AAA (the two contracts between Think Finance and Victory Park) in fact dictate that the outcome of this case probably will have *no* effect on the bankruptcy estate—except to possibly switch out the insurers for Victory Park as the party pursuing Victory Park's indemnification claim against Think Finance. This swap of parties will not increase the assets available to other creditors to divvy up.

First, the insurance policies contain subrogation clauses, that is, a provision that allows the insurers to step into Victory Park's shoes in pursuing certain claims. *See* 16 Couch on Ins. § 222:2 ("Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he or she who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities."). The subrogation provisions in the policies are as clear as they are broad: they allow that "[i]n the event of any payment under [the] Policy," the insurers "shall be subrogated to the extent of such payment to all the Insureds' rights of recovery." Notice of Removal Exh. C, Chancery Div. Civil Cover Sheet, Exh. 1, Ins. Pol. at 18.

The subrogation provisions render distinguishable the case cited by Victory Park in support of its argument. *See* Defs.' Resp. and Cross-Mot. at 13 n.13 (citing *In re Mission Bay Ski & Bike, Inc.*, 398 B.R. 250 (Bankr. N.D. Ill. 2008)). In that case, two creditors had sued the bankruptcy debtor's guarantor for breaching his guaranty of the debt owed to the creditors. *Mission Bay*, 398 B.R. at 253-54. The bankruptcy

court held that it had jurisdiction over the creditors' claim, reasoning that if the creditors recovered from the guarantor, "their claims against [the debtor] in the bankruptcy [would] be reduced accordingly." *Id.* at 254. The bankruptcy court noted, however, that the holding depended on the fact that the guarantor had *waived* any possible claim for reimbursement from the debtor. *Id.* Indeed, *Mission Bay* explained that if subrogation applied, then the bankruptcy estate would *not* be affected:

> When a guarantor pays his principal's obligation, the principal may be discharged as far as the creditor is concerned, but the guarantor acquires rights against the principal to be reimbursed for the amounts the guarantor paid on the principal's behalf. … If that rule applied here … [the guarantor] would be *subrogated* to the claim of [the creditors] against [the debtor]. … The identity of the creditors would change, but *the claims in the bankruptcy would remain the same.*

*Id.* (cleaned up) (emphases added).[3] The guarantor in *Mission Bay* had explicitly waived his right of reimbursement. *Id.* at 254 ("[T]he undersigned shall not be subrogated to any rights of the Bank"). Not so here. Quite clearly, the insurers here have preserved their subrogation rights. Notice of Removal Exh. C, Chancery Div. Civil Cover Sheet, Exh. 1, Ins. Pol. at 13.

To resist the probability of subrogation, Victory Park argues that equitable principles somehow might stand in the way of the insurers stepping into Victory Park's shoes to pursue Victory Park's indemnity claim. Defs.' Resp. and Cross-Mot. at 10-12 ("[S]ubrogation can only be 'asserted against any third party who bears the ultimate risk of loss,'" and the "existence of a subrogation provision alone is not

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient to determine which party bears ultimate responsibility.") (quoting *Commercial Union Ins. Co. v. Bituminous Cas. Corp.*, 851 F.2d 98, 100-01 (3d Cir. 1988)). That argument mistakenly confuses *equitable* versus *contractual* subrogation. Illinois courts consistently uphold *contractual* subrogation clauses and do not generally consider equitable subrogation principles when dealing with contractual subrogation agreements. *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 627 (7th Cir. 2001) (collecting cases and noting, that "[i]n recent years, the Illinois Appellate Court has consistently rejected the application of equitable principles to subrogation claims that arose from contract rather than equity.").[4] The bottom line is that subrogation is the most likely outcome (and might very well be inevitable).

Victory Park also argues that subrogation does not matter here, because Think Finance's indemnification obligations will not be triggered if the insurers are forced to cover the tribal lending lawsuits. *See* Defs.' Resp. and Cross-Mot. at 10-12. Put another way, Victory Park believes that if the insurers must cover the lawsuits, then

---

[4]The insurers believe that the insurance policies will be governed by Illinois law. Pls.' Mot. Remand at 3 ("The State Court will make [the] determination by reading and comparing the CIDs and the complaints in the Tribal Lending Lawsuits, and then construing the policies under Illinois law."); Pls.' Reply and Resp. at 8 ("Under Illinois law, which governs the policies …"). Victory Park does not directly dispute that point but simply notes that "the insurance policies were likely negotiated and executed elsewhere," that is, somewhere other than Delaware or Texas. Defs.' Resp. and Cross-Mot at 10 n.10. In its brief, Victory Park seems to conflate the issue of which state's law governs the *subrogation* provision in the insurance policies with the issue of which state's law governs the *indemnification* provisions in the GSA and AAA. *Id*. But they need not be governed by the same law, because they are separate disputes and separate contracts, each involving different parties: subrogation is a right granted by Victory Park to the insurers, while indemnification is an obligation of Think Finance to Victory Park.

Think Finance somehow will be off the hook and will not have to pay on Victory Park's indemnification claim. *Id.* The premise of this argument is that insurance is primary to indemnification. But generally it is the other way around: indemnification is primary to insurance. *See, e.g.*, 15 Couch on Ins. § 217:16 (explaining that "[a]n insurer seeking indemnification in accordance with a provision in a contract between its insured and another party has no *greater* rights than are provided for in the contract," which implicitly assumes that indemnitors are primary to insurance) (emphasis added). To be sure, the cases that the insurers cite for that proposition are not from states whose law might govern here.[5] *See* Mot. Remand at 11 (citing *Maplewood Partners L.P. v. Indian Harbor Ins. Co.*, 654 Fed. App'x 466, 468 (11th Cir. 2016) (unpublished); *Wal-Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583, 593 (8th Cir. 2002)); *Aetna Ins. Co. v. Fid. & Cas. Co. of N.Y.*, 483 F.2d 471, 473 (5th Cir. 1973). But the cases do all rely on the principle that indemnification obligations come before insurance. And Victory Park fails to distinguish them in any meaningful way.[6]

---

[5]Victory Park notes that the GSA and AAA both include choice of law provisions stating that they should be interpreted under Delaware law. Defs.' Resp. and Cross-Mot. at 10 n.10; Mot. Remand Exh. 2, GSA § 17(d); Mot. Remand Exh. 3, AAA § 9.3. But the parties did not brief the issue, and there has been no suggestion that the indemnification clause will be decided differently from the cases cited above.

[6]Victory Park argues that the cases can all be distinguished because they decided disputes between two insurers, the indemnitee's insurer and the indemnitor's insurer. Defs.' Resp. and Cross-Mot. at 12 n.12. But Victory Park does not satisfactorily explain why that makes a difference. Victory Park only argues that, in those cases, "the court faces a very different situation in which 'both [insurers] calculated and accepted premiums with knowledge that they might be called upon to satisfy a full judgment.'" *Id.* (quoting *Wal-Mart*, 292 F.3d at 592). But the same is true here: Think Finance agreed to indemnify with a full understanding that it might have to do so, and the insurers agreed to insure with the full understanding that *they* might have to do so.

The meat of Victory Park's argument on this issue seems to be that Think Finance cannot be primarily liable (as compared to the insurers) to indemnify Victory Park unless Think Finance either agreed to "bear[] the ultimate risk of loss," or other equitable principles require Think Finance to pay first. *Id.* at 10-11 (quoting *Commercial Union Ins. Co.*, 851 F.2d at 100-01). But Think Finance *did* agree to bear the ultimate risk of loss. The indemnification provisions in the AAA and GSA are broad and provide that Think Finance will "indemnify and hold harmless [Victory Park] … for any Losses which [it] may incur or be subject to as a result of or arising from" the tribal lending agreements. Pls.' Reply and Resp. at 6-7; Mot. Remand Exh. 2, GSA § 16(b); Mot. Remand Exh. 3, AAA § 3.2(b). Victory Park has not pointed to any exception in the GSA or AAA that would exempt Think Finance from losses covered by the insurers (for example, there is no "other insurance" clause).

The main case that Victory Park cites on this point, *Dome Petroleum Limited v. Employers Mutual Liability Insurance Company of Wisconsin*, 767 F.2d 43, 46 (3d Cir. 1985) actually *supports* a holding that Think Finance will be responsible on the indemnification clause. *See* Defs.' Resp. and Cross-Mot. at 14-15 (quoting *Dome*, 767 F.2d at 46-47). In that case, the Third Circuit held that the indemnitor had not agreed to bear the ultimate risk of loss as against the indemnitee and the indemnitee's insurer. *Dome*, 767 F.2d at 47. But the court then explicitly stated that it *only* arrived at that result because the indemnification clause included its own subrogation provision:

> If Dome had not placed the subrogation language into paragraph 16.1, its intent would have been to assume ultimate liability. … However, the

subrogation language makes clear the intent that Dome assumed liability only insofar as necessary to prevent loss to First Jersey and specifically reserved the right to shift the ultimate loss onto third parties liable to First Jersey. This intent is made obvious by placing the subrogation language in the same paragraph as the indemnity language and by the specific reference in the subrogation clause to the indemnification clause.

*Id.* (cleaned up). The important distinction between *Dome* and the situation here, of course, is that there is *no* subrogation clause in the GSA and AAA indemnification provisions, and Victory Park has not pointed to any other relevant exception limiting indemnification in the GSA or AAA. Absent a subrogation clause or other exception, even the reasoning of *Dome* would have led to imposing liability on the indemnitor. *See id.*[7]

At the end of the day, the insurers' position that they will be permitted to step into Victory Park's shoes is well-grounded in the insurance policies, and Victory Park has not convincingly explained why Think Finance somehow will be off the hook if the insurers are forced to pay out.[8] And, in any event, whether Think Finance has a defense against Victory Park's indemnification claim does *not* depend on whether Victory Park is pursuing it or, in its stead, the insurers are pursuing it.

Finally, Victory Park argues that the insurance-coverage dispute will affect the bankruptcy in the sense that it will make a global settlement more difficult:

---

[7]It is true that *Dome* applied New Jersey law, *Dome*, 767 F.2d at 45, which no party argues applies to this case. But *Dome* is consistent with the other authority holding that indemnification is primary to insurance.

[8]Victory Park also argues that the fact that it has filed a proof of claim in the Think Finance bankruptcy makes this case somehow automatically related to the bankruptcy. Defs.' Resp. and Cross-Mot. at 7-8. But that argument conflates this insurance-coverage dispute with Victory Park's indemnification claim against Think Finance. The *indemnification* claim obviously is part of the bankruptcy case, but that does not necessarily confer jurisdiction over this distinct insurance-coverage claim.

"Because Think Finance cannot both satisfy Victory Park's indemnity claim and make the financial contribution required of it under the Global Settlement, the resolution of this dispute will determine the success of the Global Settlement and Think Finance's chapter 11 plan." Defs.' Resp. and Cross-Mot. at 5. As explained above, however, insurance coverage is unlikely to increase the total amount of money available in the bankruptcy because the insurers still will press the indemnification claim against Think Finance. What's more, however broadly the *Xonics* test for related-to jurisdiction is interpreted, it certainly does not ask whether one creditor will have to kick-in its own funds toward a settlement rather than obtaining it from insurers. That the plaintiffs in the tribal lending suits want Victory Park to pay-up does not transform this insurance-coverage dispute into a bankruptcy-related case. Related-to jurisdiction does not apply, so the Court must remand this case.

## C. Mandatory Abstention

Even if related-to jurisdiction did apply to this insurance-coverage dispute, the Court still would be required to abstain under 28 U.S.C. § 1334(c)(2). All of the elements are met: the insurers bring a state law claim, there is no other basis for federal jurisdiction, and the state court can timely adjudicate the claim. Of these requirements, Victory Park challenges only whether this case can be "timely adjudicated" in state court. The insurers argue that the case *can* be timely adjudicated in state court, pointing out that the coverage dispute consists entirely of Illinois contract and insurance law issues, and that the Chancery Division for the Circuit Court of Cook County has recently been deciding cases faster than new ones

are filed. Pls.' Mot. Remand at 14. In response, Victory Park contends that the facts of this case are too complicated for the state court to handle in a timely way. Defs.' Resp. and Cross-Mot. at 15-16.

The insurers have the better argument. There is simply no reason to think that the state court would not be able to resolve this proceeding in a reasonably timely fashion. As the insurers point out, the factual issues here actually are limited. *See* Pls.' Mot. Remand at 14. The parties agree that this is a matter of deciding whether the policies cover the tribal lending lawsuits, or whether instead the tribal lending claims were made before the policies went into effect. *See* Pls.' Mot. Remand at 1; Defs.' Resp. and Cross-Mot. at 2-3. That is an issue that the state court is readily capable of deciding, and the fact that it overlaps with fact patterns involved in the bankruptcy case does not make the fact-finding any more complicated than the usual case. Indeed, as the Seventh Circuit has explained, "[Section] 1334(c) expressly contemplate[s] parallel proceedings in the bankruptcy and state courts." *Good v. Voest-Alpine Indus., Inc.*, 398 F.3d 918, 927 (7th Cir. 2005).

It is worth noting too that § 1334(c)(2) does not ask whether the state court can decide the case *faster* than the federal court, but simply whether the state court can resolve it in a *timely* fashion. *In re Hearthside Banking Co., Inc.*, 391 B.R. 807, 816 (N.D. Ill. 2008). Indeed, here it might very well take *longer* for this case to be adjudicated in the Northern District of Texas (Victory Park's preferred venue). As the insurers point out, because this dispute does not arise under the bankruptcy code, the case would be a "non-core" proceeding in the bankruptcy, and thus the bankruptcy

court would not be permitted to issue a final judgment deciding it. *See* 28 U.S.C. § 157(c)(1). Instead, the bankruptcy court would submit findings of fact and conclusions of law to the district court (assuming the district court does not withdraw the referral), which would have to review the issue *de novo*. 28 U.S.C. § 157(c)(1). That extra level of review might cause this case to take *longer* in bankruptcy court than in state court. Plus, the specific division of the state court in which this case originated, the Chancery Division of the Cook County Circuit Court, is a specialized court handling only certain types of cases. *See* Gen. Order 1.2, 2.1(b) of the Gen. Orders of the Circuit Ct. of Cook Cty. (setting out the cases over which the Chancery Division has jurisdiction). Its limited jurisdiction should make it particularly capable of resolving this case in a reasonable time. So even if this Court were to have subject matter jurisdiction, mandatory abstention would require a remand to state court.

### D. Other Requests for Relief

In the alternative to the alternative, the insurers also argue that the Court should exercise its discretion to abstain from hearing the case under 28 U.S.C. § 1334(c)(1). Pls.' Mot. Remand at 15-18. Because the Court does not have jurisdiction over the case, and because it would be required under 28 U.S.C. § 1334(c)(2) to abstain even if it did, the Court need not consider discretionary abstention.

Lastly, in light of the holding that federal courts do not have subject matter jurisdiction over the case, Victory Park's motion to transfer the case to the Bankruptcy Court for the Northern District of Texas, R. 47, is necessarily denied.

### IV. Conclusion

For the reasons explained above, the insurers' motion to remand, R. 45, is granted, and this case is remanded forthwith to the Chancery Division of the Cook County Circuit Court. The status hearing of June 20, 2019 is vacated.

ENTERED:

<u>     s/Edmond E. Chang    </u>
Honorable Edmond E. Chang
United States District Judge

DATE: May 15, 2019